## IN THE U.S. BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 21-07702 |
| AIWA CORPORATION, | ) | |
| a Delaware corporation, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Hon. Deborah L. Thorne |
| | ) | |
| | ) | **Hearing Date: July 15, 2021** |
| _____ ) | | **Hearing Time: 9:00 a.m.** |

### NOTICE OF MOTION

PLEASE TAKE NOTICE that on Thursday, the 15th day of July, 2021, at 9:00 a.m,, I will appear before the Honorable Deborah L. Thorne, or any judge sitting in that judge's place, and present the motion of Aiwa Holdings, LLC for Limited Relief from the Automatic Stay, a copy of which is attached.

**This motion will be presented and heard electronically using Zoom for Government**. No personal appearance in court is necessary or permitted. To appear and be heard on the motion, you must do the following:

**To appear by video**, use this link: https://www.zoomgov.com . Then enter the meeting ID.

**To appear by telephone**, call Zoom for Government at 1-669-254-5252 or 1-646-828-7666. Then enter the meeting ID.

**Meeting ID and password**. The meeting ID for this hearing is 160 9362 1728  - no password required. The meeting ID and further information can also be found on Judge Thorne's web page on the court's web site.

**If you object to this motion** and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date. If a Notice of Objection is timely filed, the motion will be called on the presentment date. If no Notice of Objection is timely filed, the court may grant the motion in advance without a hearing.

AIWA HOLDINGS, LLC

By: /s/  Adam P. Silverman
    One of its attorneys

Adam P. Silverman, Esq. (ARDC #6256676)
Alexander F. Brougham, Esq.(ARDC #6301515)
ADELMAN & GETTLEMAN, LTD.

1150917_2

53 W. Jackson Blvd., Suite 1050
Chicago, Illinois 60604
(312) 435-1050
asilverman@ag-ltd.com
abrougham@ag-ltd.com

## CERTIFICATE OF SERVICE

I, Adam P. Silverman, certify that I caused to be served a copy of this notice and the attached motion on each entity shown on the attached list at the address shown and by the method indicated on the list on the 8th day of July, 2021, at or before 11:59 p.m.

By:   /s/ Adam P. Silverman
      Adam P. Silverman, Esq.

## SERVICE LIST

**VIA CM/ECF**:

- William B Avellone    bill.avellone@charteredmgt.com
- Jeremy C Kleinman    jkleinman@fgllp.com,
  mmatlock@fgllp.com;csmith@fgllp.com;csucic@fgllp.com
- Patrick S Layng    USTPRegion11.ES.ECF@usdoj.gov
- David J Stein    dstein@masudafunai.com, docketing@masudafunai.com
- Gary Vist    gvist@masudafunai.com, docketing@masudafunai.com

**VIA FIRST CLASS MAIL**:

Ace & Acme Consulting
ATTN: Bruno Marchevsky
2720 Harrison St.
Evanston, IL 60201

Channel Technology Limited
ATTN: Thomas Li,
Unit A,11/F
Seabright Pl. 9-23
Shell St.
North Point HONG KONG

Citibank
ATTN: Dave Thakkar
1825 Lake Cook Road
Northbrook, IL 60062

Foreshot Industrial Corporation
ATTN: Kevin Huang
No. 7-1, Minquan Rd., Dayuan Dist.
Taoyuan City 33759,
TAIWAN (R.O.C)

1150917_2

Gide Loyrette Nouel
A.A.R.P.I.
ATTN:  Dequire-Portier Raphaelle
15 rue de Laborde -
75008 Paris
FRANCE

Griffin Int'l Companies, Inc.
ATTN: Paul Franzich
5850 Opus Parkway, Ste. 114
Minnetonka, MN 55343

Loop Capital Markets
ATTN: Trent Schwartz
111 W. Jackson Blvd., Ste. 1901
Chicago, IL 60604

Masuda Funai Eifert & Mitchell Ltd.
ATTN: David Stein
203 N. LaSalle St., Ste. 2500
Chicago, IL 60601-1262

N. Morgan Consulting LLC
ATTN: Nick Morgan
4836 N. Woodburn St.
Whitefish Bay, WI 53217

Partridge Partners P.C.
ATTN: Mark Partridge
321 N. Clark St., Ste. 720
Chicago, IL 60654

PGH Industries LTD
ATTN: Paul Hersko
166 W. Washington, Ste. 730
Chicago, IL 60601

Schjødt, ATTN: Thomas Hagen
Ruseløkkveien 14
P.O. Box 2444 Solli
NO-0201 Oslo
NORWAY

Schonherr
Rechstanwalte
Gmbh
ATTN: Michael Woller
A-1010 Vienna,
Schottenring 19
AUSTRIA

SKW Schwarz
Rechsanwalte
Gmbh
ATTN: Margret Knitter
Postfach 20 17 42,
Munich 88017
GERMANY

Tomkins & Co.,
ATTN: Simon Gray
5 Dartmouth Road
Dublin 6, D06 F9C7
IRELAND

Tricon Logistics
ATTN: Terry Nashif
4450 W. Walnut, Ste. 100
Irving, TX 75038

Turn-Key Fulfillment, LLC
ATTN: Graigg Condiff
1025 W. Innovation Dr.
Kearney, MO 64060

U.S. Small Business Administration
721 19th St.
Denver, CO 80202

Via Licensing Corporation
ATTN: Joe Campos
1275 Market Street
San Francisco, CA 94103

Wal-Mart Stores, Inc.
c/o Bank of America
PO Box 500787
Saint Louis, MO 63150-0787

1150917_2

**IN THE U.S. BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 21-07702 |
| AIWA CORPORATION, | ) | |
| a Delaware corporation, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Hon. Deborah L. Thorne |
| | ) | |
| | ) | **Hearing Date: July 15, 2021** |
| _____ ) | **Hearing Time: 9:00 a.m.** |

**MOTION FOR LIMITED RELIEF**
**FROM THE AUTOMATIC STAY**

NOW COMES Aiwa Holdings, LLC, a California limited liability company (the "**Purchaser**"), by and through its undersigned counsel, and moves the Court, pursuant to section 362(d)(1) of the United States Bankruptcy Code (11 U.S.C. §§ 101 *et seq.*, the "**Bankruptcy Code**") and Rule 4001(a) of the United States Bankruptcy Rules (the "**Rules**"), for a modification of the automatic stay arising under section 362 of the Bankruptcy Code, for the limited purpose of clarifying the effect of a prepetition order entered, and proceedings before, the District Court for the 44th Judicial District, Dallas County, Texas (the "**Texas Court**"), and for a waiver of the 14-day stay pursuant to Bankruptcy Rule 4001(a)(3) in connection therewith (the "**Motion**"). In support of the Motion, the Purchaser respectfully states as follows:

**I.      INTRODUCTION**

This Chapter 11 case cannot proceed in a meaningful manner absent the relief requested herein. Pre-petition, the Purchaser acquired assets from a court-appointed receiver in the Texas Court pursuant to an asset purchase agreement that the receiver deemed to be the highest and best offer. The sale closed. The parties exchanged several instruments of transfer including a bill of sale, and various assignments of intellectual property. The Purchaser tendered, and the receiver accepted, the purchase price. The Purchaser registered the trademarks it acquired in its

1150665_3                                                                                          1

name with the U.S. Patent and Trademark Office. And thereafter, the receiver filed a status

report with the Texas Court providing that he had executed the Asset Purchase Agreement which

conveyed the receivership assets to the Purchaser.

After closing but before the petition date, Aiwa Corporation, debtor herein (the

"**Debtor**") filed an emergency motion in the Texas Court to "set aside" the sale as

"unauthorized," and to discharge the receiver – even though the receiver's appointment had been

initiated by the filing of an *Agreed Order Appointing Receiver* (as defined below) signed by the

Debtor. The Texas Court denied the emergency nature of the motion and set a subsequent

hearing date. The Purchaser and the receiver filed responses to the Debtor's motion, and on the

eve of a hearing thereon, the Debtor commenced the instant Chapter 11 case.

At issue is whether the Agreed Order Appointing Receiver, as well as the expressed

intent of the Texas Court, authorized the sale to be consummated upon its closing, or,

alternatively, whether the sale required further court approval to be effective. If the sale was

consummated upon closing, then the Purchaser owns the assets over which the Debtor is

currently asserting dominion and control. If the sale was not consummated, then the Purchaser

may wind up reverting to being the Debtor's secured lender, resulting in disputes over cash

collateral and adequate protection.

Until the respective rights and interests of the Purchaser and the Debtor are determined,

neither party can make meaningful use of the sold assets, fearing that a court will later find the

assets actually belonged to the other party. And because the Debtor asserts that the sold assets

are property of its bankruptcy estate, the entire administration of its Chapter 11 case is fraught

with uncertainty. No interested party will be able to deal with the Debtor with any degree of

confidence that the Debtor has the rights and interests it purports to have. Even the Debtor's

recently filed Bankruptcy Schedules and Statement of Financial Affairs cannot be relied upon

1150665_3                                                                                              2

until there is an adjudication of the parties' respective rights. And the longer the respective

interests of the Purchaser and the Debtor remain uncertain, the more damage the uncertainty will

cause to the Purchaser, the Debtor's bankruptcy estate, and all parties in interest.

The only expedient solution is to the lift the automatic stay for the limited purpose of

allowing the Texas Court to interpret the terms of its Agreed Order Appointing Receiver, as well

as the authority it intended to provide the receiver with respect to the sale. For the reasons stated

herein, allowing the Texas Court to determine this limited issue is a narrowly tailored approach

that provides for the most efficient, timely, and cost-effective means of freeing the Debtor, the

Purchaser, and the entire bankruptcy case from limbo.

## II.    FACTUAL BACKGROUND[1]

### A.    The Agreed Order Appointing Receiver

1.    In the 1970s through the 1990s, the Japanese brand "Aiwa" was a well-known

manufacturer of consumer audio equipment such as hi-fi components, headphones, and speakers,

enjoying considerable brand recognition among consumers. As the years passed, however, the

brand experienced a lengthy period of stagnation, and was eventually discontinued. Around

2015, Aiwa's U.S. trademark was acquired by investors who attempted to re-launch the brand to

sell a variety of consumer audio products. This venture resulted in the creation of the Debtor, to

market and sell Aiwa-branded products.

2.    The Debtor's business plan proved unsuccessful. By January 2021, the Aiwa

brand had failed to regain anything close to its former market share and brand recognition. The

---

[1] The extensive factual and procedural background of the proceedings before the Texas Court, together with supporting affidavits and other documents, are set forth in great detail in the *Receiver's Response to Defendant's Motion to Set Aside Unauthorized Sale and Discharge Receiver and Cross-Motion to Confirm Sale* (the "**Receiver's Response**," attached hereto as **Exhibit A**) and *Aiwa Holdings, LLC's Response to Defendant Aiwa Corporation's Verified Emergency Motion to Set Aside Unauthorized Sale and Motion to Discharge Receiver* (the "**Purchaser's Response**," attached hereto as **Exhibit B**), both of which are incorporated herein by express reference. The factual background that follows consists only of the events immediately relevant to the relief requested by this Motion.

Debtor was left with few employees, moribund cash flow, and minimal and diminishing inventory. Ultimately, the Debtor defaulted on its debts to its senior secured lenders, Fairlane Fund One, LP and Fairlane Fixed Income Fund LLC (collectively, the "**Original Lenders**").

3.       To induce the Original Lenders not to foreclose their blanket liens, the Debtor entered into a *Forbearance Agreement* dated January 4, 2021 (the "**Forbearance Agreement**," attached hereto as **Exhibit C**). In accordance with the Forbearance Agreement, the Debtor entered into an *Agreed Order Appointing Receiver* (the "**Agreed Order Appointing Receiver**," attached hereto as **Exhibit D**), which the Original Lenders were entitled to file with the Texas Court if the Debtor failed to cure its default by February 5, 2021. *See* Forbearance Agmt. § 9. Also pursuant to the Forbearance Agreement, the Debtor agreed not to contest a modification of the automatic stay by the Original Lenders in the event the Debtor filed bankruptcy. *See* Forbearance Agmt. § 12.

4.       The Debtor failed to cure its default, and the Original Lenders filed the Agreed Order Appointing Receiver with the Texas Court. On February 8, 2021, the Texas Court signed the Agreed Order Appointing Receiver, and appointed Pascal Garboni (the "**Receiver**") as the receiver for the Debtor, charged with taking and disposing of the Original Lenders' collateral. The Debtor not only did not oppose the appointment of the Receiver, but actually agreed to it. Moreover, the Agreed Order Appointing Receiver has never been amended or superseded.

5.       The Agreed Order Appointing Receiver expressly authorizes several actions by the Receiver, including the authority to,

> With the consent of Lender, take any and all actions necessary to use, convert, process and market the Collateral or the resulting products or services for the highest and best value, including, *but not limited to sale of the Collateral by auction and/or assisting Lender with disposition of the Collateral* . . . .

Agreed Order Appointing Receiver, Ex. D hereto, at 3, para. (g) (emphasis added).

B.    **The Receiver's Sale Process**

6.    The Receiver attempted to solicit interest in a sale of the collateral in his

possession, and in particular the Debtor's most valuable asset: the right to use the Aiwa brand

and its associated intellectual property. The Receiver prepared marketing materials and designed

bid procedures for an auction. Garbani Dec., Ex. A to Receiver's Resp. (*i.e.*, Ex. A hereto), ¶ 3.

The Receiver established a data room containing information for interested parties to review, and

he emailed over 500 potential acquirers or related parties, such as business brokers and

investment bankers, to inform them about the prospective sale. *Id*. These marketing efforts were

met with little interest; the Receiver did not receive any formal offers notwithstanding these

marketing efforts. As a result, in consultation with the Original Lenders, the Receiver canceled

the planned auction. *Id*. ¶ 4.

7.    Shortly thereafter, in light of the lack of interest in purchasing its collateral, the

Original Lenders decided to sell their secured claim, along with the junior secured claim against

the Debtor's assets formerly held by Mark Thomann (which the Original Lenders had acquired

directly) to the Purchaser on March 23, 3021.  As a result, the Purchaser—a participant in the

consumer electronics industry which had previously been in discussions with the Debtor to buy

its assets—acquired the Debtor's debt obligations from the Original Lenders, making the

Purchaser the Debtor's senior secured lender.

C.    **The Debtor's Violation of the Agreed Receivership Order**

8.    Meanwhile, unbeknownst to the Receiver and in violation of the Agreed Order

Appointing Receiver, the Debtor began its own, independent, attempt to sell its assets, including

the Aiwa brand. In late May 2021, the Debtor disclosed to the Receiver for the first time that,

without the Receiver's knowledge or authorization, it had entered into an agreement with one of

the Debtor's competitors, Sakar International, Inc. ("**Sakar**"), to purchase substantially all of the

Debtor's assets. In further violation of the Agreed Order Appointing Receiver, the Debtor had entered into an exclusivity agreement with Sakar, forbidding the Debtor from entertaining any other offers.

9.      The Debtor thereafter advised the Receiver—approximately six days after the date the Debtor and Sakar entered in to the documentation concerning the sale to Sakar—that the Debtor had completed the sale to Sakar and demanded that the Receiver either accept the sale to the Sakar or resign as receiver, even though (a) the Debtor failed to provide the Receiver with executed documentation evidencing the sale to Sakar, (b) no funds were ever received by the Receiver, and (c) the sale to Sakar was expressly prohibited by the Agreed Order Appointing Receiver.

10.      Upon hearing of the Sakar offer, the Purchaser promptly prepared a superior offer for substantially all of the Debtor's assets (the "**Sale Assets**"), which the Purchaser tendered to the Receiver on June 2, 2021. A breakdown of the cash consideration and promissory payments proposed by the Purchaser's and Sakar's respective offers is set forth on page 14 of the Purchaser's Response (*i.e.*, Exhibit B hereto), but in short, the Purchaser's offer was $1 million higher than Sakar's. Additionally, the Purchaser's offer provided a mechanism (through a "creditor representative" to pay all or substantially all of the creditors of the Debtor from the proceeds of the sale.

## D.      The Debtor's Implied Consent to the Sale

11.      The Texas Court held a status conference on June 3, 2021, at which the Receiver described both the Purchaser's submitted written offer and the proposed terms of the sale to Sakar based on the unsigned documentation provided by the Debtor. *See Receiver's Status Report* (the "**Receiver's Report**," attached hereto as **Exhibit E**), at 1. The Receiver reported the Purchaser's offer to be, among other things, the more economically favorable, and said he was

1150665_3                                                                                                      6

inclined to approve it if he became comfortable with its legal terms. *Id*. The Texas Court essentially responded that it sounded like everything was progressing appropriately and that she was available in the event any issues arose. Purchaser's Resp. at 6.

12.     Significantly, at the June 3, 2021 hearing, the Debtor raised no objection to the proposed sale to Purchaser. Instead, its counsel merely confirmed to the Court that he had spoken with the Receiver's counsel and was aware of the two offers, and that the Debtor "supported an expeditious sale of the receivership assets." Receiver's Report at 1.

### E.     Closing of the Asset Sale

13.     In accordance with his powers under the Agreed Order Appointing Receiver, his representations at the hearing, the Debtor's lack of objection, and the Texas Court's assent, the Receiver accepted the Purchaser's Offer on June 7, 2021. To consummate the sale of the Purchased Assets (the "**Asset Sale**"), the Receiver duly executed and delivered to the Purchaser the following documents (collectively, the "**Consummation Documents**," attached hereto as **Group Exhibit F**), in exchange for satisfaction of the debt of Debtor held by the Purchaser, additional cash consideration, and post-closing payments, as set forth in the Consummation Documents:

   a.   An *Asset Purchase Agreement between the Receiver Over Specific Assets of Aiwa Corporation and Aiwa Holdings, LLC* (individually, the "**Asset Purchase Agreement**");

   b.   An *Assignment Agreement*;

   c.   A *Bill of Sale*;

   d.   A *Trademark Assignment*;

   e.   A *Copyright Assignment*;

   f.   A *Patent Assignment*; and

   g.   A *Power of Attorney*.

14.     The Asset Purchase Agreement expressly provided for the sale to take effect immediately upon execution of the relevant documents. *See* Asset Purchase Agmt. §§ 4.1, 4.3. Consistent with the Agreed Order Appointing Receiver, the Asset Purchase Agreement was not conditioned upon additional court approval. *Id*. §§ 4.1, 4.3 In fact, the Purchaser paid the cash consideration due under the Asset Purchase Agreement to the Receiver for the benefit of the Debtor, and the closing occurred as of June 7, 2021.

15.     Promptly thereafter, the Purchaser filed with the United States Patent and Trademark Office the applicable Consummation Documents to transfer title in the trademark and other intellectual property of the Debtor to the Purchaser pursuant to the terms and conditions of the Asset Purchase Agreement.

16.     Immediately after executing and delivering the Consummation Documents, the Receiver filed the Receiver's Report, informing the Texas Court that the Receiver had followed through with his representations at the status hearing and executed the Asset Purchase Agreement. Receiver's Report at 1. The Receiver stated that the receivership assets had been conveyed to the Purchaser. *Id*.

17.     Shortly after closing of the Asset Sale, and in reliance on the Agreed Order Appointing Receiver and the Consummation Documents, the Purchaser ordered over $1 million dollars in Aiwa-branded products, to ensure product availability and commitments both regional and national brick-and-mortar retailers, online retailers, and TV shopping channels in time for the holiday shopping season.

**F.     The Debtor Attacks the Asset Sale**

18.     On June 10, 2021, three days after the closing of the Asset Sale to Purchaser, and without having raised any objection to the Asset Sale until that point, the Debtor filed an emergency motion requesting the Texas Court: (a) set aside and vacate the Asset Sale; and (b)

discharge the Receiver. The Texas Court declined to hear the Debtor's motion on an emergency

basis, and set it for hearing on June 23, 2021. The Receiver and the Purchaser both filed

responses to the Debtor's motion (*i.e.*, the Receiver's Response and the Purchaser's Response).

In addition to opposing the Debtor's motion, the Receiver's Response contained a cross-motion

to confirm the Asset Sale, to the extent further court approval was necessary. *See* Receiver's

Resp. at 6.

19.     On June 22, 2021, on the eve of the scheduled hearing, the Debtor filed the instant

bankruptcy case (the "**Chapter 11 Case**") under Subchapter V of Chapter 11 of the Bankruptcy

Code. A Subchapter V trustee, William Avellone (the "**Subchapter V Trustee**") was appointed

and a scheduling order has entered, *see* ECF No. 13, but the Court has not yet held a hearing in

the case.

20.     The Debtor filed its schedules and statement of financial affairs on July 7, 2021.

The schedules purport to treat the Purchaser as a disputed secured creditor, *see* Schedule D, ECF

No. 16, at No. 2.1, while referring to the Asset Purchase Agreement as an executory contract to

which the Debtor is a party, *see* Schedule G, ECF No. 16, at No. 2.4.

## III.    <u>RELIEF REQUESTED</u>

21.     The Purchaser, having relied on the Debtor's Agreed Order Appointing Receiver

and the duly executed Consummation Documents, and having funded the Asset Sale, asks the

Court to modify the automatic stay for the limited purpose of allowing the Texas Court to verify

whether the Asset Sale was consummated prepetition.[2]

22.     The Debtor anticipates this determination can be obtained by filing a single

motion with the Texas Court to reopen the receivership case and determine whether the Asset

---

[2]  In the event that the Texas Court determines confirmation was, in fact, a necessary procedural step for the Asset Sale to be consummated under Texas law, then the Purchaser would, as appropriate, file another motion before this Court for further modification of the automatic stay to enable to the Texas Court to enter an order confirming the sale, and hereby reserves its right to do so.

Sale was consummated under the Agreed Order Appointing Receiver, Texas law, and the proceedings that took place in the Texas Court. Given its experience with the case, the Texas Court can be expected to issue a ruling swiftly thereafter.

23.     Additionally, the Purchaser requests a finding that the 14-day stay under Bankruptcy Rule 4001(a)(3) is inapplicable, enabling the Purchaser to obtain a resolution at the earliest possible opportunity.

## IV.     **APPLICABLE STANDARD**

24.     Section 362(d)(1) of the Bankruptcy Code permits the Automatic Stay to be modified for "cause." 11 U.S.C. § 362(d)(1). The term "cause" "has no clear definition and is determined on a case-by-case basis." *IBM v. Fernstrom Storage & Van Co (In re Fernstrom Storage & Van Co.)*, 938 F.2d 731, 735 (7th Cir. 1991).

25.     Whether cause exists is left to the discretion of the bankruptcy court, guided by "the hardships imposed on the parties with an eye towards the overall goals of the Bankruptcy Code." *In re C&S Grain Co.*, 47 F.3d 233, 238 (7th Cir. 1995). "A court may grant a party relief from the stay if it finds the moving party's interest in the property can be better protected or for any other cause the court finds to be worthy." *Id.*

26.     Courts in this jurisdiction commonly frame their analyses in accordance with a three-factor test laid out by the Seventh Circuit in *In re Fernstrom Storage & Van Co*. *Fernstrom*, 938 F.2d at 735; *In re D/C Distrib., LLC*, 617 B.R. 600, 611-15 (Bankr. N.D. Ill. 2020) (noting that "as the Fernstrom factors are the only cogent test for cause in the Seventh Circuit, the factors are regularly applied outside their original context").

27.     Under *Fernstrom*, a court considers whether:

    a.  Any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit,

      b.    The hardship to the [non-bankrupt party] by maintenance of the stay
considerably outweighs the hardship of the debtor, and

      c.    the creditor has a probability of prevailing on the merits.

*Fernstrom*, 938 F.2d at 735 (citing *In re Pro Football Weekly*, 60 B.R. 824, 826 (N.D. Ill. 1986))

(alteration in original).

## V.    <u>ARGUMENT</u>

28.    Lifting the automatic stay for the limited purpose requested herein is the only way

to prevent a substantial injustice. At present, the Purchaser and the Debtor take divergent views

on whether the Asset Sale was consummated prepetition. As a result, questions fundamental to

the administration of the Chapter 11 Case—such as whether the Debtor is currently spending its

own money, or whether the Debtor owns the intellectual property rights it needs to operate in the

ordinary course of business—remain unanswered. Until this uncertainty is resolved, the Chapter

11 Case is effectively in limbo.

29.    The situation mandates an expedited resolution. The only way to advance the

Chapter 11 Case is to modify the automatic stay to allow the Texas Court to determine whether

the Asset Sale was consummated. If so, then the bankruptcy estate is entitled to the proceeds of

the Asset Sale, and the Sale Assets belong to the Purchaser. If not, then the bankruptcy estate

may retain an interest in the Sale Assets, albeit subject to the Purchaser's senior security interest,

and the Receiver should be directed to return the cash proceeds of the Asset Sale to the

Purchaser.

30.    Lifting the stay to obtain such a determination satisfies the *Fernstrom* factors

because it (a) will prevent prejudice to the Debtor and its estate; (b) will prevent substantial

prejudice to the Purchaser; and (c) will likely result in the swift issuance of a ruling by the Texas

Court.

A.   **Clarifying whether the Asset Sale was consummated will not cause prejudice to the estate or the Debtor.**

      i.      The Chapter 11 Case cannot proceed without knowing whether the Debtor owns the Sale Assets.

31.     It will be virtually impossible to administer the Chapter 11 Case without knowing what the bankruptcy estate owns. If the Asset Sale was consummated and the estate's only significant asset consists of the sale proceeds, then the Debtor has no business to operate: it cannot market or sell products utilizing the sold Aiwa brand and other intellectual property; it cannot collect accounts receivable that have been assigned to the Purchaser; and, without assets, its likelihood of obtaining credit to finance further operations is minimal.

32.     Conversely, if the Asset Sale was not consummated and the estate retains an interest in the Sale Assets, then the Purchaser nonetheless holds a blanket, first priority, perfected, lien on all, or virtually all, of the estate's assets. The Debtor cannot operate its business in the ordinary course, because it cannot spend money (*i.e.*, the Purchaser's cash collateral) without Court authority. And the Purchaser has the right to demand adequate protection of its security interest, which is likely significant, given the rapid devaluation the Debtor is believed to be causing to the Aiwa brand.

33.     Thus, absent an expeditious determination of whether the Asset Sale was consummated prepetition, the Debtor cannot operate in the ordinary course and effectively cannot use any alleged property of the estate. Consequently, the only prejudice to the Debtor and its estate (in addition to all other parties in interest) lies in maintaining the uncertainty of its estate.

34.     For the same concerns of expediency and the elimination of costly delay, the Purchaser has requested that this Court find that the 14-day stay pursuant to Bankruptcy Rule

4001(a)(3) be deemed inapplicable, so that the Purchaser may move as quickly as possible to seek relief from the Texas Court.

> ii.     The Texas Court is uniquely suited to interpet its own orders and proceedings.

35.     Interpreting the status of the Sale Assets boils down to whether, under Texas law, the proceedings before the Texas Court, considered in light of the authority granted in the Agreed Order Appointing Receiver, were sufficient to vest title to the Sale Assets in the Purchaser. Given its facility with Texas law and its familiarity with the parties, facts, briefs, and proceedings that have come before it, the Texas Court is in the best position to render a swift and authoritative determination.

36.     Courts in the Seventh Circuit have found it is a proper exercise of discretion to allow state-law issues to be determined in the most appropriate non-bankruptcy forums. *See, e.g., In re Williams*, 144 F.3d 544, 550 (7th Cir. 1998) (finding no abuse of discretion where "all roads lead to the state court: if a tenant has no viable defenses, it makes sense to permit the landlord to get its judgment of possession; if the tenant has viable defenses, then it makes sense to permit her to assert them in state court. The sooner these issues are resolved, the sooner the parties can move on . . . ."); *In re Archdiocese of Milwaukee*, 523 B.R. 655, 659 (E.D. Wis. 2014) (finding the bankruptcy court abused its discretion not to lift the stay where "resolution of the state court appeal can only help to facilitate reorganization").

37.     Courts are particularly willing to lift the automatic stay where an important issue hinges on the interpretation of a non-bankruptcy court's order. *See, e.g., In re Forehand*, No. 15-41980, 2016 WL 637955, at *10 (Bankr. S.D. Ga. Feb. 12, 2016) (lifting stay upon noting that "[t]he court that issues an order, here the Superior Court of Chatham County, Georgia, is in the best position to determine whether a party should be held in contempt for violating the court's order"); *In re Hopper*, 474 B.R. 872, 886, 89-90 (Bankr. E.D. Ark. 2012) (lifting stay where "the

characterization of this debt as support or not is an issue more appropriate for the State Court

judge to decide—she is best equipped to interpret her own order"); *Ross v. Tognetti*, Nos. 03-

37171, 04-9400, 04-9165, 2006 WL 2587544, at *12 (Bankr. S.D.N.Y. June 21, 2006) (lifting

stay where "the state court that so-ordered the Settlement Stipulation is best able to interpret its

disputed provisions").

38.     The Texas Court's unique insights into the facts and law will likely minimize (if

not entirely eliminate) any briefing needed to obtain a ruling. The same cannot be said if the

parties are required to litigate the same issue before this Court. Presumably, the Court will need

briefing on the circumstances in which the Agreed Order Appointing Receiver was entered,

procedural and factual details about the hearings already held before the Texas Court, and the

applicable Texas legal framework. This will translate into increased legal fees and inevitable

delays and uncertainty to be borne by all parties, including the Debtor and bankruptcy estate – all

of which would be avoided by proceeding in the Texas Court.

39.     Additionally, litigating before this Court could raise jurisdictional issues (each

requiring briefing and resolution) that would not be applicable in state court. The interpretation

of the Agreed Order Appointing Receiver is not yet squarely before this Court, but raises

*Rooker/Feldman* and mandatory or permissive abstention issues. Such jurisdictional challenges

will not arise if the matter is heard by the Texas Court.

        iii.    <u>The Debtor is estopped from claiming it is prejudiced by, or otherwise</u>
              <u>opposing, the proposed modification to the automatic stay.</u>

40.     In the Forbearance Agreement, the Debtor expressly agreed that,

> upon any filing of bankruptcy by [the Debtor], Lender shall be entitled to
> immediate termination of the automatic stay provisions of 11 U.S.C. § 362,
> granting Lender complete relief in allowing Lender to exercise all of its legal
> rights and remedies, including without limitation, the right to foreclose the liens
> created in the Loan Documents, judicially or non-judicially, or any other right or
> remedy afforded under the Loan Documents, at law, in equity or otherwise, and
> Borrower agrees not to directly or indirectly oppose or otherwise defend against

Lender's efforts to gain relief from the automatic stay or to foreclose the Collateral subsequent to the Forbearance Period . . . .

Forbearance Agmt., Ex. C hereto, § 12, at 4. The Debtor likewise agreed that it had the benefit of competent counsel in drafting these particular provisions; that it understood its rights under 11 U.S.C. § 362; and that the lifting of the automatic stay "shall be deemed for cause pursuant to § 362(d)(1)." *Id.*

41.     At the time these provisions were entered into, the Original Lenders had the admitted right to foreclose their liens on the Debtor's property, and the foregoing provisions constituted a material inducement for the Original Lenders to forbear from exercising their rights. As the assignee of the Original Lenders' rights under the Forbearance Agreement, the Purchaser is entitled to enforce the provisions against the Debtor.

42.      The Purchaser could assert that the above provisions entitled it to a wholesale lifting of the automatic stay to allow it to take possession of the Sale Assets, and reserves its right to do so in the future. But for now, the Debtor's prepetition waiver should prevent the Debtor from opposing the limited stay relief sought herein, on the grounds of prejudice or otherwise.

43.     The Purchaser readily acknowledges there is a split of authority as to whether prepetition waivers of the automatic stay are *per se* effective to eliminate the protections of section 362 of the Bankruptcy Code. But the Court need not determine that issue here. There is support for a middle ground, in which courts allow such waivers to be "*considered as a factor* in deciding whether relief from stay for cause should be granted." *In re 4848, LLC*, 490 B.R. 343, 348 (Bankr. E.D. Wis. 2013) (characterizing this as the approach of "[m]ost of the more recent decisions") (citing *In re Desai*, 282 B.R. 527, 532 (Bankr. M.D. Ga. 2013)).

44.     In light of the limited relief sought herein, the Court should consider the Debtor's prepetition waiver as yet another factor militating in favor of lifting the automatic stay. In effect,

the Debtor should not be permitted to receive the benefits of an agreement to modify the
automatic stay, while claiming it is prejudiced by such a modification.

**B.** **The Purchaser faces great hardship—and will suffer even greater hardship
in the future—every day a stranger controls the assets it paid for.**

45.    The nonexistent prejudice to the Debtor and its estate in lifting the stay must be
balanced, under *Fernstrom*, against the severe hardship suffered by the Purchaser. The Debtor or
the Receiver retains the cash consideration paid for the Sale Assets, yet the Debtor also continues
to use the Sale Assets, as if no sale ever occurred. Meanwhile, the Purchaser bought and paid for
the Sale Assets, and has taken significant actions in reliance theron, yet is deprived of dominion
and control over them.

46.    With the Debtor in control of the Sale Assets, the Purchaser lacks any assurance
that its Aiwa brand is being operated to acceptable standards. If the Debtor is selling defective
products, providing inadequate customer support, or failing to maintain sufficient inventory
levels, the value of the brand will suffer. The Purchaser has serious doubts about whether, given
the Debtor's poor track record, it is capable of staving off irreparable harm to the Sale Assets.

47.    In contrast, immediately following execution of the Consummation Documents,
the Purchaser began to turn a new page in the future of the Aiwa brand. With the reasonable
understanding that the Asset Sale was complete, and under tight pressure to get products
approved by trading partners and manufactured in time for the holiday season, the Purchaser
ordered *over $1 million dollars* in Aiwa-branded products. If the Purchaser has to wait months
for a determination whether it has the right to sell these products, its investment will be
irreparably lost: a palpable, irreparable injury to a company whose only "fault" was to believe
that a court order and documents signed by a court-appointed receiver meant what they said.

48.    Still more prejudice will result if the Purchaser is required to spend money
litigating the interpretation of the Agreed Order Appointing Receiver in the bankruptcy court. As

the Seventh Circuit recognized in *Fernstrom*, the prejudice to non-debtor parties, and

consequently the imperative to lift the automatic stay, is immense in situations where the

pending non-bankruptcy litigation has reached an advanced stage:

> A decision continuing the application of the stay to IBM's action would cause it
> *great prejudice* by forcing it, in effect, to write off the expenses it incurred in
> litigating its case against [the debtor] to the eve of trial. Where the stayed non-
> bankruptcy litigation has reached an advanced stage, courts have shown a
> willingness to lift the stay to allow the litigation to proceed. The attention paid to
> the stage to which the non-bankruptcy litigation has progressed is based on the
> sound principle that the further along the litigation, the more unfair it is to force
> the plaintiff suing the debtor-defendant to duplicate all of its efforts in the
> bankruptcy court. Given the advanced stage that IBM's district court action
> reached before [the debtor] asserted the stay, this factor *weighs heavily* in favor of
> modifying the stay to allow IBM's action to proceed.

*Fernstrom*, 938 F.2d at 737-36 (internal citations and quotation marks omitted) (emphases

added).

49.      As in *Fernstrom*, forcing the Purchaser to duplicate its efforts and acquaint an

entirely new judge with the complicated facts and law at issue would be inefficient and

unnecessarily costly, given the Texas Court's ability to provide a ready answer in a fraction of

the time, at a minimal legal expense.

**C.      The Purchaser has much more than a "probability" of prevailing on the
merits.**

50.      As one bankruptcy judge in this district recently observed, the showing needed to

satisfy the third *Fernstrom* prong—a probability of prevailing on the merits—is "very slight."

*D/C Distrib.*, 617 B.R. at 615 (citing *In re Vitreous Steel Prods. Co.*, 911 F.2d 1223, 1234 (7th

Cir. 1990); *In re Rexene Prods. Co.*, 141 B.R. 574, 578 (Bankr. D. Del. 1992)). Indeed, the

*Fernstrom* court itself found this factor satisfied where the contemplated action was "not

frivolous." *Fernstrom*, 938 F.2d at 736.

51.     The best evidence that the Purchaser's contemplated action is not frivolous is the language of the Agreed Order Appointing Receiver itself. There, again, in an order *negotiated by and agreed to by the Debtor*, and entered by the Court, the Receiver is authorized to

> With the consent of Lender, take any and all actions necessary to use, convert, process and market the Collateral or the resulting products or services for the highest and best value, *including, but not limited to sale of the Collateral by auction and/or assisting Lender with disposition of the Collateral . . . .*

Agreed Order Appointing Receiver, Ex. D hereto, at 3, para. (g) (emphasis added).

52.     The Receiver, in other words, was expressly authorized to sell the Sale Assets. This should be sufficient for the Asset Sale to stand, but the Receiver further solidified the sale by reporting the competing offers to the Court, indicating which one he was inclined to accept, and obtaining the Court's assent to proceed. *See Yount v. Fagin*, 244 S.W. 1036, 1041-42 (Tex. Civ. App. 1922) (upholding sale where receiver had explained terms of sale to court and court manifested its permission to proceed). And then there are the Consummation Documents—eight separate executed instruments of transfer providing unconditionally that the Sale Assets were conveyed to the Purchaser. In the face of this evidence of the Asset Sale's consummation, it is the Debtor's case, not the Purchaser's, that approaches the line of frivolity.

53.     Moreover, from the Purchaser's perspective, "prevailing on the merits" can be understood as merely *getting a determination* from the Texas Court as to whether the Asset Sale was consummated. Of course the Purchaser desires that the Texas Court will verify the sale was consummated, but any form of certainty would be preferable to the paralysis in which the Purchaser (not to mention the entire Chapter 11 Case) finds itself.

## VI.   NOTICE

54.     Bankruptcy Rule 4001(a)(1) provides that, in a Chapter 11 reorganization where no committee has been appointed, a motion for relief from the automatic stay must be served on

each of the creditors included in the debtor's list of twenty largest creditors pursuant to

Bankruptcy Rule 1007(d).

55.     This Court's *Third Amended General Order No. 20-03* suspends in part the Local

Rule governing service of motions, and requires all motions to be served at least seven (7) days

before the date of presentment.

56.     The Purchaser has served this Motion, on seven (7) days' notice, via CM/ECF or

regular U.S. mail, upon (a) the Debtor; (b) the Subchapter V Trustee; (c) the United States

Trustee for Region 11; (d) each of the creditors listed in the Debtor's list of its twenty largest

creditors, at the addresses specified therein; and (e) all other parties who have appeared or

requested service via CM/ECF in the Chapter 11 Case.

## VII.   <u>CONCLUSION</u>

57.     For the reasons stated above, the Purchaser requests that the Court (a) modify the

automatic stay to permit the Purchaser to obtain an determination from the Texas Court as to

whether the Asset Sale was consummated; (b) find that the 14-day stay pursuant to Bankruptcy

Rule 4001(a)(3) is inapplicable; and (c) grant such other and further relief as is just.

Respectfully Submitted,

AIWA HOLDINGS, LLC,
a California limited liability company

By: /s/ Adam P. Silverman
One of its attorneys

Adam P. Silverman, Esq. (ARDC # 6256676
Alexander F. Brougham, Esq. (ARDC #6301515)
ADELMAN & GETTLEMAN, LTD.
53 W. Jackson Blvd., Suite 1050
Chicago, Illinois 60604
Tel. (312) 435-1050
**Counsel for Aiwa Holdings, LLC**