UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No: 21-07702 |
| | ) | |
| Aiwa Corporation, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Honorable Deborah L. Thorne |

## MEMORANDUM OPINION

This matter comes before the court on the motion for relief from the automatic stay filed by Aiwa Holdings, LLC ("Holdings").  Holdings seeks to return to the District Court for the 44th Judicial District, Dallas County, Texas ("Texas Court") for clarification in the Aiwa Corporation ("Aiwa") receivership case.  For the reasons stated below, the motion is denied.

## BACKGROUND

Aiwa was once a well-known Japanese brand of consumer audio equipment.  At some point it no longer manufactured electronic equipment but was regarded as a valuable trademark and brand name.  In 2015, the intellectual property was acquired by investors and Aiwa Corporation was created.  The attempt to re-launch the brand to sell a variety of consumer audio products was not as successful as anticipated and by January 2021 the failure to regain brand recognition and market share was apparent.  Aiwa defaulted on its debt to its senior secured lenders, Fairlane Fund One, LP and Fairlane Fixed Income Fund LLC ("Fairlane Funds").

To work out the default, Aiwa and its senior lenders entered into a forbearance agreement and executed an agreed order appointing a receiver ("Agreed Order") which was held by the senior lenders in the event the default was not cured by February 5, 2021.  Aiwa failed to cure the default, the Agreed Order was filed with the Texas Court and on February 8, 2021, the Texas Court appointed the receiver.

The Agreed Order expressly authorized the receiver to market Aiwa's assets for the highest and best value which the receiver attempted to do.  No specific parameters for the sale were included in the Agreed Order.  Unfortunately, there was not significant interest in the brand and its associated intellectual property, and no formal offers were made.  As a result, the receiver canceled the planned auction and instead decided to sell the assets to Holdings, an entity formed when Aiwa's secured creditors, the Fairlane Funds sold their claims to an interested buyer.

During the same period, Aiwa attempted to market the assets on its own and eventually, unknown to the receiver, entered into an agreement with Sakar International, an Aiwa competitor.

On June 3, just as the receiver was finalizing the Asset Purchase Agreement with Holdings and Aiwa was entering into an agreement with Sakar, the Texas court held a status conference during which time the receiver reported on the two potential sales and allegedly stated that he was inclined to accept Holding's offer if he became comfortable with its legal terms.  In response, the Texas Court stated that everything appeared to be progressing appropriately and the court would be available if any issues arose.[1]

Shortly after the June 3 hearing, the receiver accepted Holding's offer, executed and delivered the required documents to consummate the sale.  The Asset Purchase Agreement expressly provided for the sale to take effect immediately upon execution of the relevant documents.  Holdings tendered cash to the receiver and filed documents with the U.S. Patent and Trademark Office.  It also ordered $1 million worth of Aiwa-branded products.

Three days after the closing of the sale to Holdings, Aiwa filed an emergency motion requesting the Texas court to set aside and vacate the asset sale and to discharge the receiver.

---

[1] The parties report that there was no transcript for the June 3 hearing.

The Texas Court declined to hear the motion on an emergency basis and set it for hearing on June 23, 2021.  The receiver and Holdings both filed responses to Aiwa's motion. In addition, the receiver filed a motion for approval of the sale.  Prior to the Texas Court having an opportunity to rule on the motion for approval of the sale, Aiwa filed this chapter 11 case.

Holdings filed the motion to modify the automatic stay to allow it to ask the Texas Court whether the sale to Holdings was final.[2]  Aiwa opposes the motion, arguing that the sale was not final under Texas law and therefore the assets were not legally transferred to Holdings.  The court has reviewed the pleadings filed by the parties and heard the arguments of counsel on July 22, 2021.  It is now ready to rule on the Motion to Modify the Stay.

### DISCUSSION

The Bankruptcy Code permits modification of the Automatic Stay for "cause." 11 U.S.C. § 362(d)(1). Although the Code lists examples of cause, the list is not exclusive, and no clear definition is provided.  The Seventh Circuit has instructed that the determination of what constitutes cause is left to the discretion of the bankruptcy court but has set forth several guidelines to assist in the determination.  *In re Fernstrom Storage & Van Co.*, 938 F.2d 731, 735 (7th Cir. 1991); *See also In re C&S Grain Co.*, 47 F.3d 233, 238 (7th Cir. 1995) (court may grant a party relief from the stay if it finds the moving party's interest in the property can be better protected or for any other cause the court finds to be worthy).

Under *Fernstrom*, a court should consider (1) whether any great prejudice will result to either the bankruptcy estate or to the debtor from continuation of the civil suit, (2) whether the hardship to the non-debtor party by maintenance of the stay considerably outweighs the hardship of the debtor, and (3) whether the creditor has a probability of prevailing on the merits.

---

[2] If the Texas receiver sale was final, the Aiwa assets which were allegedly sold would not be an asset of this estate but if the sale was not final, the assets would be part of the Aiwa chapter 11 estate.

*Fernstrom*, 938 F.2d at 735. Holdings has not demonstrated that it can prevail under any of the *Fernstrom* prongs and, as a result, the stay should not be modified.

### Probability of Prevailing on the Merits

Texas has long held that receiver sales should be confirmed by the court.  Although the confirmation requirement is not expressly set forth in the Texas receivership statute, the Texas Supreme Court and Texas appellate courts are consistent in requiring confirmation prior to the receiver sale becoming final.  The Texas Supreme Court in *Baumgarten v. Frost*, 143 Tex. 533, 539 (1945) held that "a sale of property in the custody of the district court by a receiver is a species of judicial sale. That such a sale, in order to be valid, must be confirmed by the receivership court cannot be doubted." *Baumgarten v. Frost*, 143 Tex. 533, 539 (1945).

In an earlier case, *Miesch v. Anderson*, 90 S.W. 2d. 314 (1936), the Texas Court of Civil Appeals explained that an order confirming a receiver sale was required.  That court stated that the statute:

> express[es] the power of the court to regulate the terms of sale, from which it is held the legislative intent that confirmation be required may be inferred. The failure of the statute to expressly provide that confirmation be required does not raise the implication of the legislative intent to dispense with that requirement. It is the established practice generally, where the rule has not been modified by positive statutory enactment, to require an order of confirmation before a sale through a receiver becomes effective.

*Miesch*, 90 S.W. 2d. at 316-317.

The sale in this case was never confirmed by the Texas Court and did not meet the requirement long held by the Texas courts.  Holdings argues that the stay should be modified for the parties to seek clarification from the Texas court as to the meaning of its orders and comments.  That is unnecessary. This court can easily look to the orders entered on the Texas Court docket and see that no order was entered confirming the sale.  *Amling v. Harrow Indus.*

4

*LLC*, 943 F.3d 373, 376 (7th Cir. 2019) (courts can take judicial notice of another court's docket). The Texas Court did not enter any order after April 29, 2021, and the motion made by the receiver to confirm the sale was never granted. The Agreed Order authorized the marketing and sale of the collateral but did not provide specific requirements for that sale which would have provided the authority for finality. The Agreed Order merely charged the receiver with marketing and selling the collateral but did not specify terms.

Holdings relies upon, *Yount v. Fagin*, 244 S.W. 1036, 1041 (Tex. Civ. App. 1922) to support its position that the sale was final even though there was no order entered by the Texas Court. The facts of *Yount* do not support this position but support the requirement that an order confirming a sale is required if the court has not previously approved the specific terms. The receiver in that case reported to the court the exact terms of the recommended sale and the court in a written judgment stated that the receiver was authorized and instructed to make the sale and execute documents conveying all the right title and interest to the purchaser. In reviewing the receivership court on appeal, the Texas Court of Civil Appeals stated that:

> [i]t is the general rule that where a receiver is directed or ordered in general terms to make a sale of property, the sale must, be confirmed by the court making the order before it can have full validity and be binding; and in such cases, without such confirmation, the purchaser acquires no title.

*Id.*

Because the receiver in *Yount* reported to the court the exact terms of the sale, the court granted permission prior to consummation of the sale which was sufficient for the Texas appellate court. Holdings' argument that this is the situation in this receiver sale does not hold. The Aiwa receiver did not have preapproval for terms as the *Yount* receiver did and the Texas Court docket does not support that finding. Later in June, the Aiwa receiver suggested that he was inclined to accept one of the offers if he could understand the legal terms, but there was no

advance approval of the sale by the Texas Court.  It merely reported that it would be available to the parties.  Later the receiver filed a motion to confirm the sale, but no order was entered.  *Yount* simply does not support Holdings' position.

Other Texas courts have reinforced that an order confirming a sale is required for finality. In 2008, a Texas appellate court stated in *Salaymeh v. Plaza Centro, LLC*, 258 S.W.3d 236, 240 (Tex. App. 2008):

> [t]he sale of property in receivership is generally not effective until the sale is reported by the receiver and confirmed by the court, after notice to the parties . . . In confirming the sale, the court must determine from all of the facts and evidence whether the bid received was fair and reasonable.

Holdings argues that the language of the Agreed Order authorizes the receiver to consummate a sale without further need for court approval. But this is not the case. While the Agreed Order stated that the receiver was to "take any and all actions necessary to use, convert, process and market the Collateral or the resulting products or services for the highest and best value, including, but not limited to sale of the Collateral by auction," the order conspicuously omitted language waiving the requirement for court approval.  If the receiver was truly authorized to consummate the sale of the assets without court approval, language waiving the standard requirement should have been used.[3]  It was not and without either preapproval for terms or a waiver of an order confirming the sale, the sale to Holdings was not final.

Holdings has not demonstrated that it will prevail on the merits in the Texas Court and thus does not pass the *Fernstrom* test.

---

[3] For example, the receiver is authorized to hire various parties to assist with the administration of the receivership without the need for court approval. "Receiver shall be authorized . . . [to] retain auctioneers, collection agents, accountants, and other independent contractors necessary to assist in the administration of the receivership *without the need for further court approval*" (emphasis added.)

**Prejudice to the Estate and Debtor**

A return to the Texas Court would hinder the efficiency that Subchapter V cases depend on.  Because the sale was not confirmed by the Texas Court, the Debtor now must protect the assets, maintain the value and determine whether a sale for a higher and better offer is obtainable. Holdings would presumably be able to participate in the sale process and, as the lender, would have an important stake in the outcome of the chapter 11 case.  A return to the Texas Court would place the Debtor's entire operations and reorganization in limbo until the Texas Court resolved the matter.

Further, there is no indication that a return to the Texas Court would be a speedy process. Although a number of the issues have been briefed prepetition by the parties, those briefs focused in part on whether the sale should be confirmed and whether the Texas Court's confirmation after the APA had been signed would be sufficient. The posture of the required briefing has substantively changed, and the possibility of an appeal might cause further delay. Pursing this route would result in additional, unnecessary litigation costs for both parties when the matter can be put to rest by this court.

The prejudice to the estate and the debtor weighs in favor of denying relief from the automatic stay.

**Balance of Hardships**

The hardships above must be measured against the hardship that Holdings would endure if relief from the stay is denied. Holdings points to the uncertainty regarding the ownership of the assets, having a stranger using the assets, and its purchase of $1 million in Aiwa-branded products in reliance of the purchase.

Holdings' reliance on the sale of the asset was unjustified and premature. Holdings was made aware of Aiwa's objection to this sale as of June 10, 2021. Holdings should have known that a sale by a receiver must be confirmed by the court. In *Baumgarten v. Frost*, the Supreme Court of Texas stated that:

> one dealing with a receiver is charged with the knowledge of the law that the authority of the receiver is limited to that given by the court. Property belonging to the receivership must be sold on authority of the court and such a sale must be confirmed by the court.

143 Tex. 533, 542 (1945).

When Holdings purchased Aiwa-branded goods, the Texas Court had not confirmed the sale to Holdings and there was no language in the Agreed Receiver Order waiving the general requirement for the court's approval of a sale. Any action made in reliance of this purchase by Holdings was done at its own risk. The balance of hardship between the Debtor and Holdings weighs in favor of denying relief from the automatic stay.

## CONCLUSION

For the reasons explained above, the Motion to Modify the Automatic Stay is denied. An order will be entered in accordance with this Memorandum.

Dated:  July 28, 2021

ENTER:

_____
Honorable Deborah L. Thorne
United States Bankruptcy Judge

8