**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No.:  21-07702 |
| | ) | |
| AIWA CORPORATION, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Honorable Deborah L. Thorne |
| | ) | |
| | ) | Hearing Date: September 3, 2021 |
| | ) | Hearing Time: 9:00 a.m. |

**NOTICE OF MOTION**

TO:    See attached Service List

PLEASE TAKE NOTICE that on September 3, 2021, at 9:00 a.m., I will appear before the Honorable Deborah L. Thorne, or any judge sitting her place, and present the *Debtor's Motion for Order Pursuant to Sections 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006 to (A) Approve Comprehensive Sale Process, (B) Approve Bidding Procedures and Certain Bid Protections, (C) Schedule a Sale Hearing, (D) Approve Form and Manner of Notice Related Thereto, (E) Authorize Sale Free and Clear of All Liens, Claims, Interests and Encumbrances, (F) Authorize Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and Proposed Cure Amounts with Respect Thereto and (G) Grant Related Relief* (the "Motion"), a copy of which is attached.

**This Motion will be presented and heard electronically using Zoom for Government.** No personal appearance in court is necessary or permitted.  To appear and be heard on the Motion, you must do the following:

**To appear by video**, use this link:  https://www.zoomgov.com.  Then enter the meeting ID.

To appear by telephone, call Zoom for Government at 1-669-254-5252 or 1-646-828-7666. Then enter the meeting ID.

Meeting ID and Password.  The meeting ID for this hearing is 160 9362 1728 – no password required.  The meeting ID and further information can be also found on Judge Thorne's web page on the court's web site.

If you object to this Motion and want it called on the presentment date above, you must file a Notice of Objection no later than two (2) business days before that date.  If a Notice of Objection is timely filed, the Motion will be called on the presentment date.  If no Notice of Objection is timely filed, the court may grant the Motion in advance without a hearing.

Dated:  August 26, 2021

Respectfully submitted,

AIWA CORPORATION

By: /s/ Jeremy C. Kleinman
One of its attorneys

Jeremy C. Kleinman (ARDC No. 6270080)
**FrankGecker LLP**
1327 W. Washington Blvd., Suite 5G-H
Chicago, Illinois 60607
Tel: (312) 276-1400
Fax: (312) 276-0035
Email: jkleinman@fgllp.com

Attorneys for the Debtor and
Debtor in Possession

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No.:  21-07702 |
| | ) | |
| AIWA CORPORATION, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | Honorable Deborah L. Thorne |
| | ) | |
| | ) | Hearing Date: September 3, 2021 |
| | ) | Hearing Time: 9:00 a.m. |

**DEBTOR'S MOTION FOR ORDER PURSUANT TO SECTIONS 363 AND 365 OF THE
BANKRUPTCY CODE AND BANKRUPTCY RULES 2002, 6004 AND 6006 TO (A)
APPROVE COMPREHENSIVE SALE PROCESS, (B) APPROVE BIDDING
PROCEDURES AND CERTAIN BID PROTECTIONS, (C) SCHEDULE A SALE
HEARING, (D) APPROVE FORM AND MANNER OF NOTICE RELATED THERETO,
(E) AUTHORIZE SALE FREE AND CLEAR OF ALL LIENS, CLAIMS, INTERESTS
AND ENCUMBRANCES, (F) AUTHORIZE ASSUMPTION AND ASSIGNMENT OF
CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES AND PROPOSED
CURE AMOUNTS WITH RESPECT THERETO AND (G) GRANT RELATED RELIEF**

Aiwa Corporation, debtor and debtor in possession (the "Debtor"), submits this motion (the "Motion") for entry of an order, pursuant to 11 U.S.C. §§ 363(b) and (f), and 365, and Fed.R.Bankr.P. 2002, 6004 and 6006, approving bid procedures and related manner of notice and form of agreement with respect to the sale of the Debtor's operating assets (the "Operating Assets"), authorizing a stalking horse break-up fee and bid protection; and approving the sale of the Operating Assets free and clear of liens, claims and encumbrances, and scheduling dates to conduct an auction (the "Auction") and a hearing (the "Sale Hearing") to consider final approval of the sale of the Operating Assets (the "Sale"). In support of this Motion, the Debtor states as follows:

## JURISDICTION

1.       This Court has jurisdiction over this Motion under 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A).  Venue of this proceeding and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2.       The statutory basis for the relief requested herein is sections 105, 363, 365 and 1184 of the U.S. Bankruptcy Code (11 U.S.C. §§ 101 *et seq.*, hereinafter, the "Bankruptcy Code") and Rule 9007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND

1.       The Debtor was formed in 2011 and resurrected the AIWA™ trademark for a new generation of audio entertainment products.[1] The Debtor currently sells a variety of speakers and other audio products on its own website, www.aiwa.us.com, and through third-party websites, including Amazon.com.

2.       On June 22, 2021 (the "Petition Date"), the Debtor filed a voluntary petition for relief under subchapter V of chapter 11 of the Bankruptcy Code.

3.       Since the Petition Date, the Debtor has explored its options to maximize the value of the Operating Assets for the benefit of creditors, and has consulted with William Avellone, the appointed subchapter V trustee (the "Trustee") regarding those options. As a result of those discussions, in the exercise of its business judgment, the Debtor has determined that the marketing and sale of the Operating Assets at Auction, with a stalking-horse bid in place, would best maximize the value of the Operating Assets.

---

[1] Aiwa Corporation has no association with Sony Corporation or any of its subsidiaries, the previous holders of the Aiwa trademark.

<u>The Bid Procedures</u>

4.     The Debtor has prepared proposed procedures to govern the marketing of the Operating Assets, access to a due diligence data room (the "Data Room"), the criteria for the qualification of bidders to participate in the Auction, and the proposed rules that will govern the Auction and the submission of competing bids (collectively, the "Bid Procedures").  A copy of the Bid Procedures is attached hereto as **Exhibit 1**.

5.     To participate in the Auction, the Debtor proposes that all interested persons comply with the Bid Procedures, including the requirement that all bids be submitted in writing so as to be received by no later than **12:00 p.m.**, prevailing Central Time, on **October 4, 2021**. A summary of those Bid Procedures[2] follows:

| Auction | To the extent that the Debtor receives two or more bids from Qualified Bidders, the Debtor will conduct the Auction at **12:00 p.m. (Central Time) on October 6, 2021 via Zoom Videoconference,** after notice to all creditors that timely filed proofs of claim in the Debtor's bankruptcy case and prospective purchasers that signed a confidentiality agreement with the Debtor. |
|---|---|
| Auction Format | Open bidding, recorded by a court reporter, among the Buyer and other Qualified Bidders present at Auction. The Buyer will be deemed to be a Qualified Bidder so long as it is not in breach of the Sale Agreement. The Debtor will be permitted to conduct separate or joint off-the-record discussions with any Qualified Bidder, including the Buyer.<br><br>**QUALIFYING BIDS MUST INCLUDE ALL OPERATING ASSETS. THE DEBTOR WILL NOT CONSIDER BIDS FOR LESS THAN ALL OPERATING ASSETS.** |
| Initial Purchase Price | $7.5 million, with closing date cash consideration of $6 million. |

[2] This summary is not intended to be comprehensive.  Interested bidders and other parties in interest should consult the Bidding Procedures in their entirety.

| | |
|---|---|
| Minimum Subsequent Overbid | Initial Overbid of $200,000 and subsequent overbid increments of $25,000. |
| Earnest Money | A deposit of ten percent (10%) of the closing date consideration of the proposed purchase price, to be retained by the Debtor in the event that a Successful Bidder defaults in its obligations to purchase the Operating Assets pursuant to a Prevailing Bid; to be returned to any bidder that does not become the Successful Bidder or the Back-Up Bidder before the earlier of (a) 2 business days after the entry of the Sale Order or the Debtor's withdrawal of the Operating Assets for sale, and (b) 14 days after the completion of the Auction. A bidder that becomes a Back-Up Bidder but does not become the Successful Bidder will receive the return of its deposit upon the earlier of (i) 5:00 p.m. (prevailing Central Time) on the date which is twenty-one (21) days after the date of the Sale Hearing, and (ii) the closing of the transaction with the Successful Bidder. |
| Break Up Fee | If the Buyer (defined below) is not selected as the Successful Bidder and is not in breach of the Sale Agreement (defined below), the Buyer will be entitled to payment of a break-up fee of 3% of the closing date cash consideration of the Purchase Price (the "Break-Up Fee"), free and clear of liens, claims and encumbrances, paid at Closing, from the Sale Proceeds of a Sale to a Successful Bidder other than the Buyer.  If the Buyer is designated as the Back-Up Bidder at a Purchase Price higher than that set forth in the Stalking Horse Bid, and the Successful Bidder fails to close at Closing, Buyer shall be entitled to a credit in the amount of the Break-Up Fee, to be applied against any amount bid in excess of its Stalking Horse Bid. |
| Notice of Bid Procedures / Sale Motion / Sale Hearing | Within five business days after the entry of an interim order approving the Bid Procedures, the Debtor will serve the Auction and Sale Notice (defined below), providing notice of the Bid Procedures, the date and time of the Auction, the |

| | |
|---|---|
| | relief requested in the Motion, and date and time of the Sale Hearing, on: the Trustee, the Office of the U.S. Trustee, the Debtor's secured creditors, all known prospective bidders, other parties in interest upon written request to the Debtor, and all entities that have filed proofs of claim in the Debtor's bankruptcy case. |
| Access to Data Room | Upon execution of a confidentiality agreement acceptable to the Debtor, the Debtor will grant Potential Bidders reasonable access to the Data Room, which will provide financial and other relevant information available to any Potential Bidder. |
| Qualifying Bid Information | To be considered a Qualified Bidder, Potential Bidders must deliver to the Debtor: (a) any information that the Debtor requests establishing a Potential Bidder's ability, including financial wherewithal, to timely close the Sale of the Operating Assets; (b) a cashier's or certified check in the amount of ten percent of their proposed bid payable to the Debtor; and (c) an executed purchase agreement in substantially the same form as the Sale Agreement, setting forth a purchase price with closing date consideration of at least $6.2 million.<br><br>The Debtor will provide copies of the contracts included as part of each Qualified Bid received by the Debtor to submitting Qualified Bidder within one business day of receipt, and no later than 4:30 p.m. on the day prior to the Auction. |
| Initial Bid Deadline | **12:00 noon (Central Time) on <u>October 4, 2021</u>** |
| **As-Is Where-Is** | **The Operating Assets will be offered on an "as is, where is" basis without representations or warranties of any kind whatsoever. By submitting a bid, each Qualified Bidder shall be deemed to have acknowledged and represented that: (a) it has had an opportunity to conduct any and all due diligence regarding the Operating Assets prior to making its bid; (b) it has relied solely upon its own independent review, investigation and/or inspection of any documents and the Operating Assets in making** |

| | |
|---|---|
| | its bid; and (c) it did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Operating Assets by any person whatsoever, or the completeness of any information provided in connection therewith or at the Auction. |
| Free and Clear | The order approving the Sale of the Operating Assets at the Auction (the "Sale Order") will authorize and approve the transfer of all of the Debtor's right, title and interest in and to the Operating Assets and the assumption and assignment of the contracts identified by the Buyer or other Successful Bidder (the "Assumed Contracts") to the Successful Bidder, free and clear of all liens, claims, encumbrances, and interests (unless otherwise agreed to by the Successful Bidder and the Debtor), with any such liens, claims, encumbrances, and interests attaching to the Sale Proceeds in the same amount, rank and priority as those liens, claims, encumbrances, and interests enjoyed prior to the Auction and Sale. Any and all liens, claims, encumbrances, and interests shall be paid from the Sale Proceeds pursuant to the Sale Order, and, in the event that any liens, claims, encumbrances or interests are in dispute, pursuant to further order of the Bankruptcy Court. |
| Withdrawal of the Operating Assets | At any time prior to the Auction Date, the Debtor may withdraw the Operating Assets in the Debtor's sole discretion. If the Debtor withdraws the Operating Assets, and the Buyer is not then in default of the Sale Agreement, the Buyer will be entitled to reimbursement of its actual, out-of-pocket costs, in an amount no greater than the Break Up Fee, incurred in connection with the negotiation of the Sale Agreement and any due diligence performed regarding the Operating Assets. |
| No Other Qualified Bidders | If, as of the Auction Date, there are no Qualified Bidders other than the Buyer, the Debtor will be obligated to sell the Operating Assets to the Buyer pursuant to the terms and conditions of the Sale |

| | Agreement without further extension or delay, subject to the approval of the Bankruptcy Court at the Sale Hearing. |
|---|---|
| Additional Bid Procedures | Provided that one or more Qualified Bids are received prior to the Initial Bid Deadline, the Debtor may thereafter establish such modified or additional Bid Procedures as the Debtor deems appropriate based on the circumstances, provided any modifications and additions shall not be materially inconsistent with the Bid Procedures. |
| Objections to Sale / Sale Motion | The Debtor proposes that any objections to the Motion (other than with respect to the Bid Procedures and related matters approved pursuant to the Bid Procedures Order) be in writing, conform to the Bankruptcy Rules and this Court's order, and set forth: (a) the nature of the objector's claim against or interests in the Debtor's estate; (b) the basis and specific grounds for the objection; and (c) all evidence in support of said objection, and be filed and served so as to be received on or prior to **October 11, 2021 at 5:00 p.m., Central Time**, by: (i) the Debtor, (ii) the Trustee, (iii) the Office of the U.S. Trustee, and (iv) the Successful Bidder. The Debtor proposes that any person objecting to the Motion that has not complied with the requirements of this paragraph not be heard at the Sale Hearing. |

6.     These Bid Procedures are similar in form to those used by other debtors and trustees and have been prepared with input from the Trustee, and Hilco IP Services, LL d/b/a Hilco Streambank (the "Hilco Streambank"), the Debtor's proposed sale consultant and auctioneer.  The Bid Procedures were also provided prior to filing to the office of the U.S. Trustee, and Aiwa Holdings, LLC the Debtor's primary secured lender.

The Stalking Horse Bid

7.      On August 26, 2021, subject to this Court's approval, and subject to higher and better offers, the Debtor agreed to enter into the Agreement for Purchase and Sale with Aiwa Acquisitions, LLC (the "Buyer"), substantially in the form attached hereto as **Exhibit 2** (the "Sale Agreement").[3]  Under the Sale Agreement, the Debtor proposes to sell to the Buyer or such other Qualified Bidder that submits a bid at the Auction that is determined to be the highest and best offer for the Operating Assets (the "Successful Bidder"), to the fullest extent permitted by 11 U.S.C. §§ 363 and 365, and free and clear of any and all liens, claims or other encumbrances, all right, title and interest of the Debtor in and to the Operating Assets, including the Aiwa trademark, inventory owned by the Debtor, personal property, intangible property, and licenses related thereto.

8.      The Sale Agreement was negotiated at arm's-length and constitutes a good faith offer to purchase the Operating Assets in accordance with 11 U.S.C. § 363(m).

9.      Pursuant to the Sale Agreement, the Buyer proposes to purchase the Operating Assets for total consideration of at least $6 million, and as much as $7.5 million (the "Purchase Price"), to be paid:

- $600,000 (the "Deposit" or "Earnest Money") to be paid upon entry of an initial order approving the Debtor's proposed Bid Procedures.

- $5.4 million be paid at closing, which is to occur on or before October 31, 2021; and

- Up to $1.5 million to be paid on the earlier of (i) the date that the Buyer sells the Operating Assets to an unrelated third party; or (ii) the four-year anniversary of the Effective Date, so long as, in either case, the Operating Assets are appraised by an unrelated third party to have a fair market value of $20 million.

---

[3] A signed copy of the Sale Agreement, containing the same material financial terms set forth in Exhibit 2, will be filed prior to the September 3, 2021 hearing on this Motion.

10.     The Debtor, in consultation with the Trustee, believes that, subject to higher competitive bids at the Auction, the Sale Agreement provides fair value for the Operating Assets and will allow the Debtor to complete its subchapter V bankruptcy case in an efficient manner.

**Stalking Horse Bid Protection/ Break Up Fee**

11.     The Sale Agreement establishes the market for the Operating Assets and ensures that the Auction will yield proceeds from which to fund a subchapter V plan (the "Plan") that will provide a substantial recovery for unsecured creditors. The Buyer's agreement to enter into, and be bound by, the Sale Agreement prior to the Auction provides value to the Debtor's estate.  For these reasons, the Debtor has agreed, subject to this Court's approval, that if the Buyer is not the Successful Bidder for the Operating Assets at the Auction and the Debtor consummates a transaction with a purchaser other than the Buyer, the Buyer will be entitled to a break up fee in the amount of 3% of the closing date cash consideration (the "Break Up Fee").  In the event that the Break Up Fee becomes due, the Break Up Fee will be paid to the Buyer at closing of an alternative sale transaction from the proceeds of that sale, and the Debtor requests that the Sale Order provide that the Break Up Fee be free and clear of all liens, claims, encumbrances, and interests.  In addition, if the Buyer is designated as the Back-Up Bidder (as defined in the Bid Procedures) at an amount in excess of the Stalking Horse Bid, and the Successful Bidder at auction is unable to close, Buyer shall be entitled to a credit in the amount of the Break-Up Fee against any amounts that it bid in excess of the Stalking Horse Bid.

**RELIEF REQUESTED**

12.     The Debtor respectfully requests, pursuant to 11 U.S.C. §§ 105, 363(b) and (f), and Fed.R.Bankr.P. 2002 and 6004:

A.  Entry of an Order (the "Bid Procedures Order"):

(i)     Authorizing the Debtor to conduct an Auction of the Operating Assets on October 6, 2021;

(ii)    Scheduling the Sale Hearing on October 14, 2021, to confirm the sale of the Operating Assets;

(iii)   Approving the form and manner of notice of the Auction and the Sale Hearing; and

(iv)   Approving the Break Up Fee, and

(v)    Approving the Bid Procedures.

B.     Entry of the Sale Order following the Sale Hearing, authorizing the Debtor to sell the Operating Assets to the Buyer pursuant to the Sale Agreement, or to a Successful Bidder other than the Buyer if the Buyer is not the Successful Bidder, pursuant to the terms agreed to by the Debtor and the Successful Bidder, free and clear of all liens, claims and interests, with such liens, claims and interests to attach to the Sale Proceeds of the Operating Assets with the same validity (or invalidity), priority, perfection and extent as existed immediately prior to the Sale; and

C.     If the Court approves a higher and better offer for the Operating Assets from a Successful Bidder not affiliated with the Buyer, authorizing the Debtor to pay the Break Up Fee to the Buyer out of the Sale Proceeds, free and clear of all liens, claims and interests.

## BASIS FOR THE RELIEF REQUESTED

### The Auction will maximize the value of the estate.

13.    The paramount goal in selling estate property is to maximize the estate. *See, e.g., Corp. Assets, Inc. v. Paloian*, 368 F.3d 761, 767 (7th Cir. 2004) ("governing principle at a confirmation proceeding is the securing of the highest price for the bankruptcy estate"); *In re Food Barn Stores, Inc.*, 107 F.3d 558, 564-65 (8th Cir. 1997) ("In bankruptcy sales, a primary objective of the Code [is] to enhance the value of the estate"); *In re Integrated Resources, Inc.*, 147 B.R. 650, 659 (S.D.N.Y. 1992) ("It is a well-established principle of bankruptcy law that the . . .

[Trustee's] duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate."); *In re LJBV, Ltd.*, 544 B.R. 401, 406 (Bank. N.D. Ill. 2016) ("The goal of selling bankruptcy estate assets should be to maximize the assets' selling price, not to control who obtains the assets.")

14.    The Debtor has determined that to maximize the value of the Debtor's assets, it is in the best interests of the estate and its creditors to complete the marketing and sale of the Operating Assets through the proposed auction process.

15.    The Debtor may sell estate property outside the ordinary course of business, pursuant to 11 U.S.C. § 363(b)(1), so long as it has articulated a business justification. *In re UAL Corp.*, 443 F.3d 565, 571 (7th Cir. 2006) ("The criteria for approval, therefore, are whether the transaction makes good business sense, in which event the creditors as a whole should benefit"); *In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991); *In re Efoora, Inc.*, 472 B.R. 481, 488-89 (Bankr. N.D. Ill. 2012); *In re Telesphere Commc'ns, Inc.*, 179 B.R. 544, 552 (Bankr. N.D. Ill. 1994).

16.    The Court exercises its discretion in determining whether to approve a sale of estate property. *Paloian,* 368 F.3d at 767. The Court reviews the Debtor's business judgment to make an independent determination as to whether that judgment is reasonable. However, the court "should not substitute its judgment for the Debtor's." *Efoora, Inc.*, 472 B.R. at 488 (internal citations omitted). "A trustee has considerable discretion when it comes to the sale of estate assets, and that discretion is entitled to great judicial deference as long as a sound business reason is given." *Id.* (citing cases).

17.    Bankruptcy Rule 6004(f)(1) permits sales of estate property outside of the ordinary course of business by private sale or by public auction. The Debtor has determined that proceeding with an auction sale of the Operating Assets, with the assistance of Hilco Streambank, and with

the Buyer as the designated stalking horse, pursuant to the Sale Agreement and the Bid Procedures,
represents the estate's best opportunity to maximize the value of the estate for the benefit of the
estate and its creditors.

18.     More than ample business justification supports approval of the Sale to the Buyer
or another Successful Bidder pursuant to the Bid Procedures. The Buyer's offer is the result of
significant good faith, arm's length negotiations.  The Debtor has consulted with the Trustee
regarding the Buyer's offer and designated the Buyer's proposal as the Stalking Horse Bid as a
result of those discussions.

19.     Courts uniformly recognize that procedures intended to enhance competitive
bidding are consistent with the goal of maximizing estate assets. *See, e.g., Integrated Resources,*
147 B.R. at 659 (such procedures encourage bidding and maximize the value of the debtors'
assets); *In re Financial News Network, Inc.*, 126 B.R. 152, 156 (S.D.N.Y. 1991) (procedures
approved for sale of estate property should provide an adequate basis for comparison of offers,
and a fair and efficient resolution of bankrupt estates).

**Sale free and clear of liens, claims and encumbrances is warranted.**

20.     Pursuant to 11 U.S.C. § 363(f), the Debtor may sell the Operating Assets under 11
U.S.C. § 363(f), free and clear of liens, claims and encumbrances, if any one of the following
conditions is satisfied: (a) applicable non-bankruptcy law permits the sale of the property free and
clear of such interest; (b) the entity holding the lien, claim or encumbrance consents to the sale;
(c) the interest is a lien and the price at which such property is to be sold is greater than the
aggregate value of all liens on the property; (d) the interest is in bona fide dispute; or (e) the entity
could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of its interest.

11 U.S.C. § 363(f); *In re Fillion*, 181 F.3d 859, 862 (7th Cir. 1999) (free and clear sale may be authorized if any one of the conditions identified in section 363(f) is satisfied).

21.     One or more of the conditions identified in section 363(f) are easily satisfied with respect to the proposed Auction. Among other things, the Purchase Price exceeds the aggregate amount of all of Holdings' outstanding liens, and Holdings could be compelled to accept a monetary satisfaction of its liens.

**The Break Up Fee is reasonable.**

22.     The proposed Break Up Fee is reasonably calculated, consistent with its purpose, to incentivize the Buyer to act as a stalking horse bidder and attract other bidders to the Auction. *See In re Financial News Network, Inc.,* No. 91B–10891, 1991 WL 127524, at *1 n. 5 (Bankr. S.D.N.Y. May 10, 1991) *aff'd,* 134 B.R. 737 (S.D.N.Y. 1991) *aff'd,* 980 F.2d 165 (2d Cir.1992) (the existence of a stalking horse agreement attracts other bidders to the auction); *In re JW Resources, Inc.*, 536 B.R. 193, 196 (Bankr. E.D. Ky. 2015); *Integrated Resources*, 147 B.R. at 657; *In re S.N.A. Nut Co.*, 186 B.R. 98, 102 (Bankr. N.D. Ill. 1995).

23.     Courts have adopted several approaches in assessing the propriety of a proposed break up fee. One approach focuses on the Debtor's business judgment, looking at (1) whether the relationship of the parties who negotiated the break up fee is tainted by self-dealing or manipulation; (2) whether the fee hampers, rather than encourages, bidding; and (3) whether the amount of the fee is unreasonable relative to the proposed purchase price. *See, e.g., Integrated Resources,* 147 B.R. at 657.

24.     Another approach treats break up fees as administrative claims that are approved, pursuant to 11 U.S.C. § 503(b)(1)(A), if they are actually necessary to preserve the value of the estate under the same test as all other administrative expense requests. *See, e.g., In re ASARCO,*

*LLC*, 650 F.3d 593, 603 (5th Cir. 2011); *In re Reliant Energy Channelview LP*, 594 F.3d 200 (3d Cir. 2010); *S.N.A. Nut*, 186 B.R. at 104-05.

25.    Break up fees in the range of 1% - 4% of the purchase price have been approved as reasonable. *In re Tama Beef Packing, Inc.*, 312 B.R. 192, 194 (Bankr. N.D. Iowa 2004), reversed on other grounds, *In re Tama Beef Packing, Inc.*, 496, 498 (8th Cir. B.A.P. 2005). Fees in the range of 1% to 2% of the purchase price are often approved. *See In re Tiara Motorcoach Corp.*, 212 B.R. 133, 138 n. 6 (Bankr. N.D. Ind. 1997); *JW Resources*, 536 B.R. at 195.

26.    The Break Up Fee, amounting to 2% to 2.5% of the Purchase Price, is reasonable when considered under any of the above criteria. The Debtor and the Buyer are not affiliated in any way, and have engaged in arm's length negotiations regarding the proposed sale. Moreover, the Buyer has indicated that the bid protection provisions are a critical component of its offer for the Operating Assets.

27.    The Break Up Fee is within the range generally approved in bankruptcy sales, and is fair and reasonable under the circumstances. *See Integrated Resources*, 147 B.R. at 662 ("Break-up fees should constitute a fair and reasonable percentage of the proposed purchase price, and should be reasonably related to the risk, effort, and expenses of the prospective purchaser. When reasonable in relation to the bidder's efforts and to the magnitude of the transaction, break-up fees are generally permissible"); *see also Financial News Network*, 980 F.2d 165, 167 (2nd Cir. 1992) (transaction at issue provided for a $8.2 million break up fee on the $149.3 million transaction); *Integrated Resources Inc.*, 147 B.R. at 662 (approving a $7.5 million break up fee on a $656 million transaction).

**The overbid increments are reasonable**.

28.    Similarly, the proposed overbid provision is fair and reasonable. Pursuant to the Bid Procedures, any initial overbid offer for the Operating Assets must exceed the closing-date cash portion of the Purchase Price by at least $200,000, and each minimum bid increment thereafter must be at least $25,000. A minimum initial overbid ensures a net benefit to the estate after deducting (a) the Break Up Fee paid to the Buyer in the event of a prevailing overbid, and (b) the additional costs to the estate of considering additional bids.

29.    Minimum overbids of up to 10% of the initial purchase price have been found fair and reasonable. *See, e.g., In re Tempo Technology Corp.*, 202 B.R. 363, 369 (D. Del. 1996); *In re Wintex, Inc.*, 158 B.R. 540, 543 (D. Mass. 1992). Thus, the proposed overbid is well within norms.

**The form and manner of notice of the Bid Procedures, the Auction and the Sale Hearing are reasonable, adequate and appropriate**.

30.    The Debtor requests that the Court conduct two hearings in connection with this Motion: first, a hearing to consider and approve the Bid Procedures and schedule the Auction, Sale Hearing and related deadlines; and second, the Sale Hearing itself.

31.    The Debtor proposes that within five business days after entry of the Bid Procedures Order, the Debtor serve copies of the Bid Procedures, the Bid Procedures Order and the Auction and Sale Notice in the form attached hereto as **Exhibit 3** (the "Auction and Sale Notice"), and the Sale Agreement (collectively, the "Bid Package"), by first-class U.S. mail, postage prepaid, upon: (a) the Trustee, (b) the U.S. Trustee, (c) the Buyer, (d) the Debtor's secured creditors, (e) all entities that have been identified as having a continuing interest in the Operating Assets, (f) counterparties to the Debtor's executory contracts and unexpired leases identified in the Bankruptcy Schedule G filed by the Debtor, (g) the Debtor's members, and (h) all parties that have requested notice in the Debtor's bankruptcy case.

32.     The date proposed for the Sale Hearing complies with Fed.R.Bankr.P. 2002(a)(2), 6004 and 6006(c), in that it will be more than 21 days after service of the Bid Package. In addition, the materials in the Bid Package will comply with Fed.R.Bankr.P. 2002(c)(1) and 6004(f)(1) in that they will contain the information required by those rules.

33.     The Debtor respectfully submits that the Bid Package, including the Auction and Sale Notice, satisfies the notice and information requirements of Fed.R.Bankr.P. 2002, 6004 and 6006(c), and 11 U.S.C. §§ 363 and 365, and that such notice is good and sufficient and that no other or further notice should be required.

**The assumption and assignment of the Assumed Contracts and Unexpired Leases are appropriate and should be approved.**

34.     In connection with the proposed Sale, the Debtor seeks authority to assume and assign any designated Assumed Contracts to the Buyer or other Successful Bidder. The Debtor is not aware of any defaults under the Debtor's Assumed Contracts. The Debtor requests that objections, if any, to the assumption and assignment of Assumed Contracts be filed and served so as to be actually received no later than three calendar days after the Auction.

35.     If an objection to the assumption and assignment of the Assumed Contracts cannot be resolved consensually among the parties, The Debtor requests that the Court set a hearing to determine such matters no later than six calendar days after the conclusion of the Auction. The Debtor proposes that the failure to timely file and serve an objection shall be deemed consent to the assumption and assignment of the Assumed Contracts, and that any and all objections thereto be deemed forever waived and released.

36.     Subject to the court's approval, the Debtor may assume or reject any executory contract, pursuant to 11 U.S.C. § 365(a). The standard governing the Court's approval of the

Debtor's decision to assume or reject executory contracts or unexpired leases is the Debtor's reasonable business judgment. *See, e.g. In UAL Corp.*, 635 F.3d 312, 319 (7th Cir. 2011).

37.     The Debtor has determined, in its business judgment, that the assumption and assignment of any of the Debtor's executory contracts as may be identified by the Buyer or other Successful Bidder, is in the best interests of the estate and its creditors, as it will meet the expectations of prospective purchasers, allow the Operating Assets to continue to be operated as anticipated, and thus allow the Debtor to maximize the Purchase Price.

**The Buyer is a good faith purchaser entitled to the protection of 11 U.S.C. § 363(m).**

38.     The Buyer is a good faith purchaser and is entitled to the full protections of 11 U.S.C. § 363(m), which provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

39.     The Sale Agreement is the result of a good faith, arm's-length transaction. Therefore, the Debtor requests that the Court find that the Buyer or other Successful Bidder will be purchasing the Operating Assets in good faith, within the meaning of 11 U.S.C. § 363(m), and entitled to the protections thereunder. *See In re Rock Indus. Mach. Corp.*, 572 F.3d 1195, 1197 (7th Cir. 1978) (applying "traditional equitable definition of "good faith purchaser" as one who purchase the assets for value, in good faith, and without notice of adverse claims."). To constitute lack of good faith, a party's conduct must usually amount to fraud, collusion between the purchaser and other bidders or the Debtor or an attempt to take grossly unfair advantage of other bidders. *See*

*Hower v. Molding Systems Eng'g Corp.*, 445 F.3d 935, 938 (7th Cir. 2006); *In re Abbotts Dairies of Pennsylvania, Inc.,* 788 F.2d 143, 147 (3d Cir. 1986); *In re Sullivan Cent. Plaza I, Ltd.,* 106 B.R. 934 (Bankr. N.D. Tex. 1998). Courts make this determination based on the facts of each case. *See In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978).

40.     As required by 11 U.S.C. § 363(m), the Debtor and the Buyer have acted in good faith in negotiating the Sale Agreement. The Sale Agreement is the result of a series of negotiations in which all parties were represented by counsel. The Buyer is not an insider of the Debtor as that term is defined in 11 U.S.C. § 101(31), and all negotiations have been and will continue to be conducted on an arm's-length, good faith basis. The Bid Procedures are designed to ensure that no party is able to exert undue influence over the process. Under the circumstances, the Buyer or other Successful Bidder should be afforded the benefits and protections that 11 U.S.C. § 363(m) provides to a good faith purchaser.

### Waiver of Stay

41.     The Debtor requests that the Sale Order be effective immediately by providing that the 14-day stay under Fed.R.Bankr.P. 6004(h) be waived. The purpose of Rule 6004(h) is to provide sufficient time for an objecting party to appeal before an order can be implemented.  *See* Advisory Committee Notes to Fed.R.Bankr.P. 6004(h) and 6006(d).  All creditors and parties in interest will receive notice of the Auction and will be provided with an opportunity to be heard. The Debtor submits that such notice is adequate, and that waiving the 14-day waiting period is warranted.

### Waiver of Page Limitations

42.     Given the nature of the issues addressed herein, the Debtor respectfully requests that the Court waive the 15-page limit established by Local Bankruptcy Court Rule 5005-3.D.

**NOTICE**

43.     Notice of this Motion has been provided to the Office of the United States Trustee, the Debtor, the Buyer, the Lender, all parties filing proofs of claim in the Debtor's bankruptcy case, the Debtor's members, all counterparties to contracts and leases with the Debtor, and all other parties requesting notice of pleadings filed in this case. The Debtor respectfully submits that such notice be approved as adequate under the circumstances.

**WHEREFORE**, Aiwa Corporation respectfully requests that the Court:

(A) Enter an order (i) approving the Bid Procedures and the Break Up Fee, (ii) scheduling the Auction and the Sale Hearing, and the associated deadlines, and (iii) approving the form and manner of notice of the Auction and Sale Hearing and certain bid protections as described herein;

(B) Enter a second order at the Sale Hearing: (1) authorizing and approving the Sale, pursuant to 11 U.S.C. §§ 363(b) and (f), free and clear of liens, claims, interests and encumbrances to the Buyer or other Successful Bidder, and (ii) approving the assumption and assignment of the Assumed Contracts and Leases pursuant to 11 U.S.C. § 365, and

(C) Granting such other and further relief as the Court deems just and proper.

Dated:  August 26, 2021          Respectfully submitted,

                                 AIWA CORPORATION

                                 By:     /s/  Jeremy C. Kleinman
                                          One of its attorneys

Jeremy C. Kleinman (ARDC No. 6270080)
**FrankGecker LLP**
1327 W. Washington Blvd., Suite 5G-H
Chicago, Illinois 60607
Tel.: (312) 276-1400
Fax: (312) 276-0035
Email: jkleinman@fgllp.com

Attorneys for the Debtor

## <u>CERTIFICATE OF SERVICE</u>

I, Jeremy C. Kleinman, an attorney, certify that on **August 26, 2021**, I served a copy of the foregoing **Notice of Motion and Motion Pursuant to Sections 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006 to (A) Approve Comprehensive Sale Process, (B) Approve Bidding Procedures and Certain Bid Protections, (C) Schedule a Sale Hearing, (D) Approve Form and Manner of Notice Related Thereto, (E) Authorize Sale Free and Clear of All Liens, Claims, Interests and Encumbrances, (F) Authorize Assumption and Assignment of Certain Executory Contracts and Unexpired Leases and Proposed Cure Amounts with Respect Thereto and (G) Grant Related Relief** on each entity listed below by operation of the Court's Electronic Filing System and/or by mail or email to the parties on the attached Service List.


_____ */s/ Jeremy C. Kleinman* _____


## Electronic Mail Notice List

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- William B Avellone    bill.avellone@charteredmgt.com
- Alexander F Brougham    abrougham@ag-ltd.com, dbaird@ag-ltd.com
- Albert A Ciardi    aciardi@ciardilaw.com, sfrizlen@ciardilaw.com;dtorres@ciardilaw.com
- Jeremy C Kleinman    jkleinman@fgllp.com, mmatlock@fgllp.com;csmith@fgllp.com;csucic@fgllp.com
- Patrick S Layng    USTPRegion11.ES.ECF@usdoj.gov
- Adam P. Silverman    asilverman@ag-ltd.com, aweir@ag-ltd.com
- David J Stein    dstein@masudafunai.com, docketing@masudafunai.com
- Gary Vist    gvist@masudafunai.com, docketing@masudafunai.com

## Service List

Ace & Acme Consulting
ATTN:  Bruno Marchevsky
2720 Harrison St.
Evanston, IL 60201-1216

Ace & Acme Consulting
ATTN:  Bruno Marchevsky
4537 Wood Valley Dr.
Raleigh, NC  27613

Aiwa Co., Ltd
3F, Ichigo Higashi Golanda Bldg
1-6-3, Higashi Gotanda Shinagawa
Tokyo, 141-0022
JAPAN

Aiwa Holdings, LLC
ATTN:  Alan Mizrahi
5455 Wilshire Blvd., Ste. 1410
Los Angeles, CA 90036-4240

Aiwa Corporation, a Delaware Corporation
965 W. Chicago Ave.
Chicago, IL 60642-5413

Audio Mobile Americas S.A.
P.H. Gran Plaza, Oficina Tres F
c/o Andres Mojica, San Francisco
Ciudad de Panamá
PANAMÁ

William B. Avellone
Chartered Management Co., Inc.
10 S. Riverside Plaza, Suit 875
Chicago, IL 60606-3717

John Paul Benavides
3400 Comanche Trail
Hurst, TX 76054-6048

Nathan J. Betts
Christensen & Laue, PLLC
5101 Vernon Avenue South, Suite 400
Edina, MN 55436-4503

Joseph Born
6644 N. Kimball
Lincolnwood, IL 60712-3732

Lucille Born
6644 N. Kimball
Lincolnwood, IL 60712-3732

Channel Technology Limited
ATTN:  Thomas Li, Unit A,11/F
Seabright Pl. 9-23 Shell St.
North Point
HONG KONG

Cho & Partners, ATTN:  Hyewon Jung
6th Floor Ann Jay Tower
718-2 Yeoksam-dong, Kangnam-ku
Seoul 135-080
KOREA

Citibank
ATTN:  Dave Thakkar
1825 Lake Cook Road
Northbrook, IL 60062-1332

CITIES Retail Services, Inc.
5850 Opus Parkway, Ste. 250
Minnetonka, MN 55343-4400

CITIES Retail Services, Inc.
c/o Christensen & Laue PLLC
ATTN:  5101 Vernon Avenue South
Suite 400
Edina, MN 55436

Alan J. Cook 2013 Trust UTAD 5/3/2013
990 N. Lake Shore Dr., Apt. 28E
Chicago, IL 60611-1382

Dakota Systems
33 E. Wacker Dr., Ste. 1970
Chicago, IL 60601

Duly Family Trust
2601 Network Blvd., Ste. 500
Frisco, TX 75034-1921

E.B. Carlson Marketing, Inc.
19 Pine Hill Road
Princeton, MA 01541-1136

Fairlane I
4849 Greenville Ave., Ste. 1480
Dallas, TX 75206-4130

Alan Farkas
845 Woodward Ave.
Deerfield, IL 60015-2864

Flexport, Inc.
ATTN:  Nick Mahnke
333 North Green St., 12th Floor
Chicago, IL 60607-1425

Foreshot Industrial Corporation
ATTN:  Kevin Huang
No. 7-1, Minquan Rd., Dayuan Dist.
Taoyuan City 33759
TAIWAN (R.O.C)

Frank Revocable Living Trust
c/o Allan Frank
5020 Hudson Dr.
Plano, TX 75093-5079

Michael Gao
14 Empress Dr.
Hawthorn Woods, IL 60047-3714

Pascal Garbani c/o David M. Clem
Johnson Clem Gifford PLLC
1717 Main Street, Ste. 3000
Dallas, TX 75201-4335

Cornelius Graham Gerst
5340 N. Magnolia
Chicago, IL 60640-2205

Gide Loyrette Nouel A.A.R.P.I.
ATTN:  Dequire-Portier Raphaelle
15 rue de Laborde - 75008 Paris
FRANCE

Gravis Trademark Patent Ltd. Co.
Çankaya Mah Ahmet Ihsan
Sok. No: 3/8 06690
Çankaya Ankara
TURKEY

Griffin Int'l Companies, Inc.
ATTN:  Paul Franzich
5850 Opus Parkway, Ste. 114
Minnetonka, MN 55343

Illinois Dept. of Revenue
Bankruptcy Unit
ATTN:  Joshua LeMasters
PO Box 19035
Springfield, IL 62794-9035

Department of the Treasury
Internal Revenue Service
PO Box 7346
Philadelphia PA 19101-7346

Kane Russell Coleman Logan PC
ATTN:  Brian W. Clark
901 Main St., Ste. 5200
Dallas, TX 75202-3705

Alex Kemmler
2261 Fulton St., Apt. A
San Francisco, CA 94117-1006

Kutak Rock LLP
PO Box 30057
Omaha, NE 68103-1157

Lamson Dugan and Murray
ATTN:  Dan Pauley
701 P Street
Lincoln, NE 68508-1356

Latimer Levay Fyock LLC
ATTN:  John Ambrogi
55 W. Monroe St., Ste. 1100
Chicago, IL 60603-5128

Sophia Lee
14F, No.10 Xuegin Rd., Sanxia Dist.
New Taipei, Taipei 327
TAIWAN

Linden & De Roeck - Euro
ATTN:  Bénédicte Linden - LDIP
Avenue Louise 203 B7
Brussels, 1050
BELGIUM

Aiwa Acquisitions LLC
c/o Michael Zaino, Wachtel Missry
One Dag Hammarskjold Pl.
885 Second Ave.
New York, NY 10017

LLCsmarbriefar@futurenet.com
PO Box 79548
Baltimore, MD  21279-0548

Loop Capital Markets
ATTN:  Trent Schwartz
111 W. Jackson Blvd., Ste. 1901
Chicago, IL 60604-3514

Masuda Funai Eifert & Mitchell Ltd.
ATTN:  David Stein
203 N. LaSalle St., Ste. 2500
Chicago, IL 60601-1262

mHub
965 West Chicago Ave
Chicago, IL 60642-5413

Monster LLC
Attn: Kenny Brody c/o DRW
540 W. Madison St., Ste. 2500
Chicago, IL 60661-2555

N. Morgan Consulting LLC
ATTN:  Nick Morgan
4836 N. Woodburn St.
Whitefish Bay, WI 53217-6063

Clay Neigher
709 Dowd St
Durham, NC 27701-2620

Partridge Partners P.C.
ATTN:  Mark Partridge
321 N. Clark St., Ste. 500
Chicago, IL 60654-5011

PGH Industries LTD
ATTN:  Paul Hersko
166 W. Washington, Ste. 730
Chicago, IL 60602-3588

Michael Phillips
2406 Thayer St.
Evanston, IL 60201-1494

PN-3 Dullyen Anvils, LLC
c/o Michael Sullivan
7500 Lyndhurst Lane
Plano, TX 75025-2013

Jeffrey M. Pomerance, Esq.
SulmeyerKupetz
333 S. Grand Ave., Ste. 3400
Los Angeles, CA 90071-1538

Sven Radavics
#22-03 3 Central Boulevard
18965
SINGAPORE

Rightspace Storage-Allen
610 East Main St
Allen, TX 75002-3084

Schjødt, ATTN:  Thomas Hagen
Ruseløkkveien 14
PO Box 2444 Solli
NO-0201 Oslo
NORWAY

Schonherr Rechsanwälte Gmbh
ATTN: Michael Woller
Schottenring 19
A-1010 Vienna
AUSTRIA

Luke Shepard
600 W. Chicago Ave., Ste. 510
Chicago, IL 60654-2282

James Sherrit
729 Pulitzer Lane
Allen, TX 75002-5238

SKW Schwarz Rechsanwälte Gmbh
ATTN:  Margret Knitter
Wittelsbacherplatz 1
Munich 80333
GERMANY

Spencer Fane LLP
ATTN:  Jason Spark
5700 Granite Parkway, Ste. 650
Plano, TX 75024-6812

Spencer Fane LLP
ATTN:  Scott Breeding
1000 Walnut St., Ste. 1400
Kansas City, MO  64106

Subscribe with Amazon Program Agmt
Amazon Services LLC
410 Terry Avenue North
Seattle, WA 98109-5210

Michael Sullivan
7500 Lyndhurst Lane
Plano, TX 75025-2013

Sundial Valve
7500 Lyndhurst Land
Plano, TX 75025-2013

Swissberg - Wire
ATTN:  Ladina Schmid
Seefeldstrasse 224
PO Box CH-8034
Zurich
SWITZERLAND

Nan Teske
2400 S. Logan Ave., Unit C
Milwaukee, WI 53207-1769

Mark Thomann
3759 N. Magnolia
Chicago, IL 60613

Tomkins & Co., ATTN: Simon Gray
5 Dartmouth Road
Dublin 6, D06 F9C7
IRELAND

Tricon Logistics
ATTN:  Linda Green
4450 W. Walnut, Ste. 100
Irving, TX 75038

Tricon Logistics
ATTN:  Spencer D. Critchett
5170 Wiley Post Way
Salt Lake City, UT 84116

Turn-Key Fulfillment, LLC
ATTN:  Graigg Condiff
1025 W. Innovation Dr.
Kearney, MO 64060-7968

U.S. Small Business Administration
ATTN:  Kate O'Loughlin
500 W Madison, Suite 1150
Chicago, IL 60661-2566

Aiwa Europe B.V.
Melvill van Carnbeelaan 68
3971 B G Driebergen
THE NETHERLANDS

Via Licensing Corporation
ATTN:  Joe Campos
1275 Market Street
San Francisco, CA 94103-1410

Visible SCM
ATTN:  Terry Nashif
5160 Wiley Post Way
Salt Lake City, UT 84116-2833

Klaas de Vos
Melvill van Carnbeelan 69, 3971BG
Driebergen
THE NETHERLANDS

Wachtel Missry LLP
885 Second Ave., 47th Floor
New York, NY 10017-2229

Wal-Mart Stores, Inc.
c/o Bank of America
PO Box 500787
Saint Louis, MO 63150-0787

James Williams
7500 Lyndhurst Lane
Plano, TX 75025-2013